# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs June 7, 2016

## STATE OF TENNESSEE v. BRYANT MONTRELL HUNT

**Appeal from the Circuit Court for Madison County**
**No. 15-275     Donald H. Allen, Judge**

---

**No. W2015-02249-CCA-R3-CD  -  Filed August 5, 2016**

---

The defendant, Bryant Montrell Hunt, pled guilty to one count each of arson, aggravated burglary, and vandalism of property over $500. The plea agreement provided the defendant would be sentenced as a Range I, standard offender. Following a sentencing hearing, the trial court denied the defendant's request for alternative sentencing and imposed the maximum sentences of six years for arson, six years for aggravated burglary, and two years for vandalism over $500, to be served concurrently in confinement. On appeal, the defendant contends the trial court erred in denying his motion for alternative sentencing. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Gregory D. Gookin, Assitant District Public Defender, Jackson, Tennessee, for the defendant-Appellant, Bryant Montrell Hunt.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Jerry Woodall, District Attorney General; and Brian M. Gilliam, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I.     Factual and Procedural Background

This case arises out of a fire occuring November 10, 2014. Following the fire, the defendant was charged with and subsequently pled guity to one count of arson, one count of aggravated burglary, and one count of vandalism over $500. The State and the defendant agreed the defendant would be sentenced as a Range I, standard offender, with

the trial court to determine the sentence length and manner of service. The State and the defendant further agreed the sentences would be served concurrently. A sentencing hearing was set for October 19, 2015.

During the sentencing hearing, the State first submitted a presentence investigation report. The report summarized the results of an investigation into a fire occurring in the home of Tameika Curry. The investigation revealed the presence of accelerant in three locations inside the home and determined the fire was the result of arson by way of aggravated burglary.

The State then called the victim, Tameika Curry. Ms. Curry testified that on November 10, 2014, a fire destroyed the rental home she lived in with her three children. At the time of the fire, Ms. Curry and her children were not home. The fire destroyed all of Ms. Curry's belongings, which she valued at approximately $20,000. Ms. Curry did not have renter's insurance at the time of the fire.

Ms. Curry further testified that at the time of the fire, she was in an intermittent relationship with the defendant, who is the father of two of her children. Ms. Curry and the defendant frequently argued over his drug use, and in the days leading to the fire, Ms. Curry and the defendant were again fighting. On November 6, 2014, the defendant threw a rock through Ms. Curry's kitchen window. From November 6, 2014 through November 10, 2014, the date of the fire, the defendant sent Ms. Curry 200 to 400 text messages and called her at least 200 times. On November 8, 2014, the Saturday before the fire, the defendant sent Ms. Curry a text message stating that she was "going to be homeless by sunrise." Around 6:30 a.m. the following Monday, November 10, 2014, Ms. Curry learned from a neighbor that a fire had destroyed her home. Ms. Curry asked that the defendant receive the maximum sentence.

The defendant testified that at the time of the arson, he was employed and helped financially support his children. He paid child support, purchased clothes for his children, and had recently purchased mattresses for his children's beds. The defendant admitted to pleading guilty to the offenses and stated, "I take full responsibility for my actions." The defendant further admitted to leaving his children homeless and testified that he understood the magnitude of his actions.

The defendant testified regarding his prior felony convictions. At age eighteen, he was convicted of robbery and use of a firearm during a crime of violence, for which he was sentenced to seventy-eight months in confinement with two years of supervised release. The defendant ultimately served only sixty-eight months of the sentence. At the

time of his prior felony convictions, the defendant was a gang member, but his affiliation ended during his federal incarceration.

With respect to his criminal history, the defendant further testified that in 2009, he was convicted of unlawful possession of drug paraphernalia and received probation, community service, and a fine. In 2009, he also received a speeding ticket. In 2010, he was convicted of marijuana possession and sentenced to six days in jail, which he served on the weekends. In 2014, he received a few speeding tickets. In June 2014, he pled guilty to vandalism and was ordered to serve a sixty-day sentence.

The defendant testified that while in federal custody, he received job training but not anger management training. The defendant requested anger management as part of this sentence, admitting he has a problem with anger. During his current incarceration, the defendant received medication for depression and paranoid schizophrenia. According to the defendant, the medications have helped calm him.

The defendant testified that he has a relationship with his children and would like to remain in contact with them but is fine with severing contact with the victim. The defendant expressed understanding that he will have to pay $20,000 in restitution to Ms. Curry and indicated that will be "no problem."

The defendant testified that during his current incarceration, he has assisted the police with other criminal investigations. He further testified that since being in protective custody, he has been the victim of a gang-related assault. According to the defendant, he is not safe in jail. The defendant requested to serve any sentence imposed by the trial court in a county facility or in a state facility other than a prison operated by the Tennessee Department of Correction.

The defendant testified that he threw the rock through the victim's window on November 6, 2014, out of anger. He was angry because the victim discussed his drug use with others. According to the defendant, on November 10, 2014, he set the victim's house on fire because he felt betrayed and rejected. The defendant admitted that at the time of the fire, he had been using cocaine.

The defendant apologized for setting fire to the victim's home and admitted he was wrong. The defendant again confirmed that he has since gone on medication and is not nearly as angry. The defendant also acknowledged that depression and schizophrenia are not excuses for his actions.

At the conclusion of the sentencing hearing, the State asked the trial court to impose the maximum sentence to be served in confinement, order $20,000 in restitution to be paid to the victim, and order the defendant not to have any contact with Ms. Curry. The defendant asked the trial court to consider his guilty plea and testimony regarding his remorse in mitigation. Given the defendant's willingness to pay restitution, request for anger management, psychiatric treatment, employment history, and criminal record, the defendant asked the trial court for alternative sentencing. Alternatively, the defendant requested a sentence less than the maximum of six years.

After considering the evidence presented at the time of the guilty plea, the evidence presented as part of the sentencing hearing, and the presentence report, the trial court denied the defendant's request for alternative sentencing and instead ordered the defendant to serve concurrent maximum sentences of six years for arson, six years for aggravated burglary, and two years for vandalism over $500 in the Tennessee Department of Correction. This timely appeal followed.

## II. Analysis

The defendant contends the trial court erred when it denied his request for alternative sentencing. Due to his admission of guilt, acknowledgment that his criminal behavior was wrong, willingness to financially support his children, and criminal history, on appeal the defendant argues that a period of shock incarceration, followed by intensive supervision, would have fulfilled the goals of sentencing while recognizing the seriousness of his criminal conduct.[1] The State argues that the trial court appropriately stated its reasons for denying the Defendant's request for alternative sentencing on the record, and the proof supports the trial court's decision. The State further argues the period of confinement ordered by the trial court was within the appropriate range and in compliance with the purposes and principles of Tennessee's sentencing statutes. We agree with the State.

The trial court has broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." *State v. Bise,* 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption

---

[1] At the sentencing hearing, the defendant did not request shock incarceration followed by a period of intense supervision. Rather, he simply asked the trial court to consider "some form of alternative sentencing."

of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. In *State v. Caudle,* our supreme court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d 273, 278-79 (Tenn. 2012).

Under the 2005 amendments to the sentencing act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40–35–113 and 40–35–114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b).

The trial court must state on the record the factors it considered and the reasons for the ordered sentence. Tenn. Code Ann. § 40-35-210(e); *Bise,* 380 S.W.3d at 706. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence ... should not negate the presumption [of reasonableness]." *Bise,* 380 S.W.3d at 705–06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter,* 254 S.W.3d 335, 347 (Tenn. 2008)(citing Tenn. Code Ann. § 40–35–102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). However, no criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis,* 940 S.W.2d 558,

559 (Tenn. 1997). Instead, the defendant bears the burden of proving his or her suitability for alternative sentencing options. *Carter,* 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40–35–303(b)). The defendant must show that the alternative sentencing option imposed "will subserve the ends of justice and the best interests of both the public and the defendant." *Hooper v. State,* 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other grounds, State v. Hooper,* 29 S.W.3d 1, 9-10 (Tenn. 2000).

When imposing a sentence of full confinement, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant [.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2),(4).

In this case, the trial court carefully considered each factor mandated by Tennessee Code Annotated section 40-35-210 prior to imposing concurrent sentences of six years for arson, six years for aggravated burglary, and two years for vandalism over $500. When determining the proper sentence, the trial court properly reviewed the presentence report, considered the evidence presented at the time of the defendant's guilty plea, and considered the evidence presented during the sentencing hearing. With respect to the nature and characteristics of the defendant's criminal conduct, the trial court recognized the severe loss incurred by Ms. Curry and her three children, concluding "this is a very serious offense."

The trial court then considered both mitigating and enhancement factors, noting that the defendant had a history of criminal convictions as an adult in excess of those necessary to establish the appropriate range, including at least two prior felony convictions and approximately ten misdemeanor convictions, four of which were Class A misdemeanors. The trial court gave the defendant's criminal conviction history great weight for enhancement purposes.

The court also considered the defendant's criminal behavior. The trial court noted that as recently as the time of the arson, cocaine use was a part of the defendant's life. The trial court gave this great weight.

The trial court next considered the extensive property damage suffered by the victim. The victim and her family lost everything and were left homeless. At the very least, it will take the victim $20,000 to replace the lost belongings. The trial court gave this factor moderate weight.

The trial court next found that the defendant has repeatedly failed to comply with sentence conditions involving release into the community. On at least two prior occasions, the defendant committed new offenses while on some type of probation or release. The trial court gave this great weight.

The trial court considered the defendant's criminal history. The trial court noted several juvenile charges that were not considered for sentencing purposes and other minor adult offenses that it did not give much weight. The trial court next considered the defendant's prior felony convictions. Of significance, the defendant received two felony convictions at age eighteen and after serving sixty-eight months of a seventy-eight-month sentence, he was released with two years of supervision. While on supervised release, the defendant was charged with and convicted of vandalism. Both the felony convictions and the defendant's commission of additional crimes while on supervised release were given great weight by the trial court.

The trial court next considered the defendant's April 15, 2009, convictions of unlawful possession of drug paraphernalia and disobeying a traffic control device, for which the defendant was placed on probation. While on probation for these offenses, the defendant received a traffic citation, significant only because the defendant was still on probation, and was charged with and convicted of possession of marijuana.

The trial court then noted that on November 6, 2014, about four days before the defendant committed the arson, aggravated burglary, and vandalism at issue, the defendant was charged with vandalism of property under $500. This crime involved the same victim, Ms. Curry.

With respect to mitigating factors, the trial court considered the defendant's guilty plea and acceptance of responsibility for his actions. The trial court noted the defendant obtained his GED while incarcerated for his prior felony convictions and has received mental health treatment during his current incarceration. However, the defendant also has two children with the victim and is $4600 behind on child support. Despite the

willingness expressed by the defendant to pay Ms. Curry restitution, the trial court opined that "the likelihood that he would ever pay this $20,000 restitution is pretty much zero." The trial court did not apply any mitigating factors.

After considering the various enhancement and mitigating factors, the trial court imposed the maximum sentence of six years for arson, six years for aggravated burglary, and two years for vandalism over $500, in the Tennessee Department of Correction as a Range I, standard offender. Per the plea agreement, the sentences were to be served concurrently. The trial court then ordered the defendant to submit to DNA testing, have no future contact with the victim, pay court costs, and pay restitution of $20,000.

The trial court then denied the defendant's petition for alternative sentencing, stating:

> Now, in determining whether or not he would be an appropriate candidate for alternative sentencing, I've considered this presentence report which I've talked about. I've considered the defendant's physical and mental condition which again it appears to me that he has had some drug issues as recently as earlier this year. You know, I do consider that in this matter. I also consider the seriousness of this offense and the fact that he committed this offense really not only out of betrayal, but out of anger. You know, it's pretty clear that he was mad at Ms. Curry. She apparently had told him to leave the house and so forth and apparently he got mad because she wouldn't return his 200 text messages and so he just decided he was going to leave her homeless. You know, if you don't contact me quickly, you're going to be homeless by sunrise and apparently that's what happened. You know, I do find that he has very little remorse. He can sit up here and say he's sorry. He regrets that this happened. I'm sure he regrets that it happened, but I don't sense remorse from him. I think he's just like I'm sorry I got caught, but I don't really care. Yeah, I burned her house down. It's almost like he takes pride in the fact that he burned her house down and left her homeless. I don't sense much remorse at all from [the defendant].

> For those reasons I just don't feel like he's a good candidate for probation. Measures less restrictive than confinement have been frequently applied to this defendant without success. Certainly any kind of probation would unduly depreciate the seriousness of this offense. I mean, this woman has suffered tremendously and will suffer tremendously in the future. I think the likelihood of him ever making restitution is pretty much

none even though he says that he's willing to do that. Again, his previous history, his actions, the fact that he vandalized her property just four days before he set fire to her home tells me he has no remorse and no regret for what he's done.

He will be ordered to serve all of these sentences in the Tennessee Department of Corrections [sic].

The trial court did not abuse its discretion in imposing a sentence of confinement. The record reflects the trial court properly considered the relevant purposes and principles of Tennessee's sentencing statutes and imposed sentences within the applicable range for the defendant's Class C offense of arson, Class C offense of aggravated burglary, and Class E offense of vandalism. The trial court then made the requisite findings on the record in support of its ruling. Accordingly, we affirm the sentencing imposed by the trial court.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE